IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZUFFA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:19-cv-00938 |
| v. | ) |
| | ) |
| DENISE PERRIS & | ) |
| LYTLE CAFE, INC., | ) |
| | ) |
| Defendants. | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff Zuffa, LLC, filed a Motion for Default against Defendants Lytle Cafe, Inc., and Denise Perris. (ECF No. 17.) That Motion is granted for the reasons that follow.

### I. BACKGROUND

Zuffa, LLC, doing business as the Ultimate Fighting Championship ("UFC"), is a sports promotion company specializing in mixed martial arts. On October 6, 2018, the Khabib v. McGregor fight was held at the Octagon in Las Vegas, Nevada, and was broadcast by Zuffa via pay-per-view.[1] That event was the third-highest pay-per-view ("PPV") fight in history, with 2.5 million PPV buys.[2] Commercial establishments could stream the fight by purchasing a license and contract for authorized commercial exhibition. (Pl.'s Mot. for Default J., ECF No. 17-3, at 2, ¶ 4.)

---

[1] According to the Complaint, Zuffa is the "owner of the UFC 229 Broadcast, including all undercard matches and the entire television Broadcast" that was scheduled for October 6, 2018, and included the Khabib v. McGregor fight, as well as the undercard match, Ferguson v. Pettis. (ECF No. 1, at 2, ¶ 6.)

[2] Alan Dawson, *The 55 Best-Selling Pay-Per-View Fight Nights in History*, Business Insider (Jan. 24, 2020), https://www.businessinsider.com/the-50-best-selling-pay-per-view-events-boxing-ufc-wrestling-tv-history-2017-8.

The Defendants in this case, Denise Perris and Lytle Cafe, Inc., did not purchase such a license. (*Id.* at 3, ¶ 9.) On the evening of the fight, one (1) of Zuffa's auditors visited Lytle Cafe and observed the undercard match, Ferguson v. Pettis, playing on the bar's television. (ECF No. 17-4, at 8.) Zuffa alleges that the Defendants illegally intercepted the Broadcast and claims damages pursuant to 47 U.S.C. § 605 and 17 U.S.C. § 504.

The Summons and Complaint were served upon each Defendant on August 7, 2019. (*See* ECF Nos. 9 and 10.) Since then, Defendants have failed to plead or otherwise appear. Accordingly, the Clerk of Court entered default against Denise Perris and Lytle Cafe, Inc., on September 24, 2019. (Clerk's Certificate, ECF No. 14.) That means the allegations of the Complaint were deemed admitted. Fed. R. Civ. P. 8(b)(6). Now, Zuffa moves for default judgment before this Court. (ECF No. 17.)

## II. JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which states that district courts have jurisdiction over civil actions arising under the laws of the United States. Here, this action is brought pursuant to two federal statutes: (1) 17 U.S.C. § 501; and (2) 47 U.S.C. § 605. Thus, the Court has proper subject-matter jurisdiction over Zuffa's claims.

In pleading personal jurisdiction, Zuffa provides information in its affidavits and pleadings to support a conclusion that Lytle Cafe, Inc., is owned and operated in Pittsburgh, Pennsylvania, and that Denise Perris is a resident thereof. The Court concludes that information to sufficiently establish that it has personal jurisdiction and venue over the matter.

Service also appears to be sufficient. Under Federal Rule of Civil Procedure 4(e), a party may serve a person by leaving a copy of the summons and complaint at their "dwelling or usual

2

place of abode with someone of suitable age and discretion who resides there." Here, a copy of the Summons and Complaint were personally served upon each Defendant. (*See* ECF Nos. 9 and 10.)

### III. LEGAL STANDARD

Obtaining a default judgment requires a one-two punch. First, the party seeking default must request that the Clerk of Court enter default against the party for failing to plead or otherwise defend itself. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Then, upon the Clerk's entry of default, the party must move for a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

A court's power to grant a default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *HICA Educ. Loan Corp. v. Lepera*, 2011 WL 3515911, at *1 (D.N.J. Aug. 10, 2011) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

In assessing whether or not a default judgment is due, courts generally move through a two-part process. First, the court should "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Serv. Emps. Int'l Union Local 32BJ, Dist. 36 v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. Sept. 7, 2018) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. Apr. 7, 2008)). In conducting that assessment, the court should accept as true any factual allegations contained in the complaint (aside from those relating to the amount of damages). *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005). In other words, the court should start by determining whether the plaintiff has submitted sufficient information (taken as true) to justify the relief sought.

3

Then, even if it appears that the plaintiff is entitled to relief, default judgment is only appropriate where: (1) the plaintiff would suffer prejudice if default is denied; (2) the defendant does not appear to have a litigable defense; and (3) the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). This is because our Circuit generally "disfavors default judgments and encourages decisions on the merits." *Culver v. U.S. Dep't of Labor Occupational Safety & Health Admin.*, 248 F. App'x 403, 408 (3d Cir. 2007) (citing *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988)).

## IV. THE DEFAULT JUDGMENT

In this case, the Court serves as referee over Zuffa's fight for a default judgment. Defendants make that task an easy one, as they tapped out before the fight even began. For the reasons that follow, the Court concludes that Zuffa satisfied the requirements for a default judgment and as such, its Motion at ECF No. 17 will be granted.

### A. Entry of Default

Zuffa delivered its first jab when it requested that the Clerk of Court enter default against Defendants. (Req. for Clerk's Entry of Default, ECF No. 13.) And the Clerk entered default in Zuffa's favor on September 24, 2019. (ECF No. 14.)

### B. Liability

A second punch was thrown when Zuffa moved for default judgment before this Court. (ECF No. 17.) As noted above, the Court must first assess whether or not the Defendants appear to be liable based on the facts asserted in Zuffa's filings, which are to be taken as true. For the

4

reasons noted below, the Court concludes that the Defendants are liable for violations of 47 U.S.C. § 605 and 17 U.S.C. § 501.[3]

Section 605 prohibits the unauthorized reception and publication or use of communications. 47 U.S.C. § 605(a). Here, Zuffa is the owner of the communication at issue— the UFC 229 Broadcast, which included both the Khabib v. McGregor and Ferguson v. Pettis fights. (ECF No. 1, at 4, ¶ 18.) And, taking the facts in the Complaint as true, the Defendants "effected unauthorized interception and receipt of Plaintiff's Broadcast by ordering programming for residential use and subsequently displaying the programming in the commercial establishment known as Lytle Cafe, Inc., for commercial gain." (ECF No. 1, at 5–6, ¶ 24.) This assertion is also supported by several documents attached to the Complaint or to Zuffa's Motion for Default Judgment. (*See* ECF No. 1-1 (noting on Facebook that Lytle Cafe was hosting the "McGregor Fight" and that patrons of the bar should "[s]top down for the fight"); ECF No. 17-4, at 2–7 (providing a list of establishments that paid the licensing fee, which does not include Lytle Cafe); ECF No. 17-4, at 8–9 (detailing a "site inspection" of Lytle Cafe and indicating that the UFC 229 Broadcast was displayed on the bar's television).) The Court therefore concludes that the facts presented sufficiently establish that the Defendants violated 47 U.S.C. § 605(a).

Section 501 states that "anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author." Here, Zuffa is the owner of the UFC 229 Broadcast. (ECF No. 1, at 4, ¶ 18.) As such, Zuffa maintains the right to distribute that Broadcast, or to license commercial establishments to do the same. Defendants failed to obtain proper authority or license to publicly exhibit the UFC 229 Broadcast on October 6, 2018. (ECF

---

[3] While Zuffa's Complaint alleges that the Defendants violated 47 U.S.C. § 605 (Count I), 47 U.S.C. § 553 (Count II), and 17 U.S.C. § 501 (Count III), Zuffa only elects to seek to recover damages under § 605 and § 504 (by way of the § 501 violation). Accordingly, the Court will assess liability only as to § 605 and § 501.

No. 1, at 5, ¶ 23.) Thus, the Court concludes that the facts presented sufficiently establish that the Defendants violated 17 U.S.C. § 501.

### C. *Chamberlain* Factors

Lastly, in order to clinch a knockout, Zuffa must survive the *Chamberlain* factors. In considering *Chamberlain*'s first factor, the Court finds that Zuffa will suffer prejudice if the Court denies its Motion at ECF No. 17. As Zuffa stated in both its filings and through its attorney's statements on the record at the hearing in open Court on January 8, 2020, the Defendants have refused to engage throughout the entirety of this litigation. And by refusing to engage, Defendants have essentially choked off any remedy available to Zuffa, aside from default judgment. Thus, the Court finds that the first *Chamberlain* factor is satisfied because default judgment is the only way for Zuffa to vindicate its claims.

As to the second factor, the Court need not engage in legal jiujitsu to conclude that Defendants' lack of response means that they have no litigable defense to Zuffa's claims against them. *See Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc.*, 2007 WL 1018227, at *1 (E.D. Pa. Mar. 29, 2007) (presuming that the defendant had no litigable defense where it failed to file a responsive pleading).

Similarly, the Court concludes that the Defendants' failure to respond to the Complaint is due to culpable conduct, as the docket indicates that they were properly served. (ECF Nos. 9 and 10.) *See, e.g., Bibbs v. Sec. Atl. Mortg. Co., Inc.*, 2012 WL 3113975, at *2 (E.D. Pa. Aug. 1, 2012) (citing *York Int'l Corp. v. York HVAC Sys. Corp.*, 2010 WL 1492851, at *3 (D.N.J. Apr. 14, 2010), which held that "Defendant[s'] delay is the result of their culpable conduct because they have neither responded to the Complaint nor to [the motion for default judgment]").

6

Therefore, entry of a default judgment is appropriate with respect to both Denise Perris and Lytle Cafe.

## V. DAMAGES

The undisputed allegations in Zuffa's Complaint, taken as true, are sufficient to support its claims that Defendants violated 47 U.S.C. § 605 and 17 U.S.C. § 501. Accordingly, Zuffa is entitled to damages, at the Court's discretion, under 47 U.S.C. § 605 and 17 U.S.C. § 504.

On January 8, 2020, the Court conducted a hearing in order to hear argument regarding an appropriate award of damages. *See Durant v. Husband*, 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages). At that hearing, Zuffa's attorney made a record as to Zuffa's damages, which was unopposed, since no Defendant appeared in person or by counsel. As such, based on the entire record, the Court awards damages as follows.

### A. Statutory Damages Under § 605

Section 605 allows any aggrieved person to collect statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). A single violation of § 605 permits statutory damages of "not less than $1,000 or more than $10,000." 47 U.S.C. § 605(e)(3)(C)(i)(II). Here, Zuffa seeks a maximum award of $10,000, against each Denise Perris and Lytle Cafe.

"The specific amount of statutory damages assessed pursuant to § 605 rests within the sound discretion of the court." *DIRECTV, Inc. v. Walsh*, 540 F. Supp. 2d 553, 560 (M.D. Pa. 2008). Our Circuit has not addressed a uniform formula for calculating damages under § 605. This Court, however, is persuaded by the practice followed by other courts, where the plaintiff is awarded "the license fee the defendant, based on the maximum capacity, would have paid if it had legally purchased the event." *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, at *7 (S.D. Alabama Apr. 21, 2011).

7

The record indicates that one (1) of Zuffa's auditors visited Lytle Cafe on October 6, 2018, and observed that the bar could hold between one (1) and fifty (50) patrons. (ECF No. 17-4, at 9.) Accordingly, if Defendants had obtained proper authorization to broadcast the fight, they would have paid $788.00 for the activation fee. (ECF No. 17-4, at 1.)

The Court would be remiss, however, if it failed to recognize that it appears that the Khabib v. McGregor fight was the third-highest pay-per-view fight in history, with 2.5 million PPV buys.[4] That has to count for something. Not only did Defendants' piracy and copyright violation damage Zuffa's business, but Defendants' actions also harmed lawful customers who shelled out the money to pay the proper licensing fee to watch the big matches in a legitimate setting. Thus, the Court bumps up statutory damages to $2,500 against each of Denise Perris and Lytle Cafe.

### B. Enhanced Damages Under § 605

In addition, if the "court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii).

Courts have generally found that willfulness under § 605 is "established by the fact that an event is broadcast without authorization." *Joe Hand Promotions, Inc. v. McBroom*, 2009 WL 5031580, at *5 (M.D. Ga. Dec. 15, 2009) (quoting *J & J Sports Prods., Inc. v. Guzman*, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008); *see also Joe Hand Prods., Inc. v. Leon*, 2007 WL 4097412, at *2 (N.D. Ga. Oct. 31, 2007) (holding that broadcasting an encrypted program without authorization constitutes willfulness); *J & J Sports Prods., Inc. v. Kosoria*, 2007 WL 1599168, at *3 (S.D.N.Y. June 1, 2007) (holding an encrypted satellite program "cannot be intercepted without

---

[4] Dawson, *supra* note 1.

engaging in a willful act"); *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490–91 (S.D.N.Y.1999) ("Signals do not descramble spontaneously.").

Here, Zuffa's assertions, as pleaded and now deemed admitted, provide sufficient evidence for the Court to conclude that the Defendants did in fact stream the Broadcast. (*See* ECF No. 17-4, at 8–9.) And as stated above, Defendants did not have authorization to do so. The Court therefore concludes that Defendants willfully violated § 605.

"In determining the amount of enhanced damages, courts consider several factors: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." *Joe Hand Promotions, Inc. v. McBroom*, 2009 WL 5031580, at *5 (M.D. Ga. Dec. 15, 2009) (citing *J & J Sports Prods., Inc. v. Tu*, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008)).

Here, Defendants' conduct appears to be a one-time violation. Lytle Cafe did advertise for the event on Facebook, but that advertisement only appears to have captured a virtual audience of less than fifty (50) people. The advertisement also indicated that no cover charge applied and Zuffa's auditor did not report that he was required to pay a cover charge before entering the bar. While Defendants' unlawful monetary gains are uncertain, they did reap the benefits of being able to display a popular fight free of charge—and then they put Zuffa in a legal headlock by refusing to respond or otherwise appear.

Courts facing similar situations have typically "awarded enhanced damages of three times what it would have cost Defendants to lawfully exhibit the program." *Id.*; *see also J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009) (holding that a multiple of three (3) was appropriate when no evidence existed of a cover charge, advertisement,

9

or repeated violations); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008) (holding that a multiple of three (3) was sufficient when thirteen (13) patrons were in a 100-maximum capacity restaurant and no evidence existed of a cover charge or repeated violations); *Kingvision Pay-Per-View Corp. v. Wright*, 2006 WL 4756450 (M.D. Fla. Oct. 27, 2006) (holding that multiple of three (3) was sufficient for defendant's first known violation).

Here, the Court will use the same general benchmark. Statutory damages were assessed at $2,500 per Defendant. That number, multiplied by three (3), equals $7,500 in enhanced damages per Defendant, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

### C. Damages Under § 504

A plaintiff can also elect to recover statutory damages under 17 U.S.C. § 504. Under that statute, the infringer may be liable "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the infringement was committed willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Here, Zuffa essentially moves for the same damages requested above, but under a different statute. In assessing whether or not to award damages under both § 605 and § 504, courts have generally found it "duplicative and excessive to award Plaintiff damages under § 504 in addition to statutory and enhanced statutory damages under § 605 for the same underlying conduct." *Joe Hand Promotions, Inc. v. Aguilar*, 2019 WL 4071776, at *4 (D. Md. Aug. 29, 2019) (quoting *Joe Hand Promotions, Inc. v. Garcia-Nunez*, 2019 WL 2437456, at *3 (D. Or. June 11, 2019).

While the two statutes "vindicate separate rights," the Court has "broad discretion in setting the amount of statutory damages under the Copyright Act." *Id.* (quoting *Joe Hand Promotions, Inc. v. Levin*, 2019 WL 3050852, at *5–6 (S.D.N.Y. July 12, 2019). And in this case, the Court

concludes that the above award under § 605 sufficiently compensates Zuffa for the statutory violations committed by the Defendants and deters future violations. *See Broad. Music, Inc. v. George Moore Enters., Inc.*, 184 F. Supp. 3d 166, 171–72 (W.D. Pa. Apr. 25, 2016) ("Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions.") (quoting *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008).

Nonetheless, because to an extent § 504 does vindicate a separate right, the Court will impose an additional award of $750 (the minimum under this statute), per Defendant, to account for the violation of § 504.

### D. Attorneys' Fees

Lastly, Zuffa moves for total costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and 17 U.S.C. § 505. Specifically, Zuffa requests $1,637.95 for costs (including filing fees, service of process, auditing fee, and postage) and $1,169.00 in attorneys' fees ($350 per hour for partner fees, $150 per hour for associate attorney fees, and $95 per hour for paralegal fees), for a total of $2,806.95, per Defendant.

Having found that Defendants violated § 605 and § 504, Zuffa is an "aggrieved party" who "prevailed" for purposes of 47 U.S.C. § 605(e)(3)(B)(iii) and is entitled to recover its costs, including reasonable attorneys' fees. 47 U.S.C. § 605(e)(3)(B)(iii) ("The Court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.").

Zuffa submitted an Affidavit in Support of Default and Costs and Fees, which attests that Zuffa's attorneys expended a total of 2.7 hours on the case, and that a paralegal spent 7.2 hours

working on the case. (ECF No. 17-1.) All rates appear to be reasonable.[5] Thus, the amount requested by Zuffa is granted. The Court will award $2,806.95, per Defendant, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

## VI. CONCLUSION

For the reasons stated above, the Court will grant Zuffa's Motion Default Judgment at ECF No. 17. Damages are awarded as follows:

1. **AGAINST DENISE PERRIS:** $2,500 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); $7,500 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii); $750 in damages under 17 U.S.C. § 504(c)(1); and $2,806.95 in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

2. **AGAINST LYTLE CAFE:** $2,500 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); $7,500 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii); $750 in damages under 17 U.S.C. § 504(c)(1); and $2,806.95 in attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

An appropriate Order will issue.

_____
Mark R. Hornak
Chief United States District Judge

Dated: January 31, 2020
cc: All counsel of record

---

[5] The Court also notes that at the hearing before the Court on January 8, 2020, the Court authorized Zuffa's attorney to file an amended fee petition, to account for that attorney's attendance of the aforementioned hearing. The fact that Zuffa's attorney declined to file such an amended petition is further evidence that Zuffa takes a reasoned and practical approach to its request for attorneys' fees.

12